BONGIORNO SUPERMARKET, INC., ET AL. *v.*
ZONING BOARD OF APPEALS OF THE CITY
OF STAMFORD ET AL.
(SC 16952)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued September 24—officially released November 11, 2003

*Michael J. Cacace*, with whom, on the brief, were *Jane W. Freeman* and *Ronald E. Kowalski II*, for the appellants (plaintiffs).

*Robert A. Fuller*, with whom were *Brenden P. Leydon* and, on the brief, *Nicholas E. Wocl* and *Joseph J. Tooher*,

for the appellees (defendant Grade A Market CT Limited Partnership et al.).

*Opinion*

KATZ, J. The dispositive issue in this appeal[1] is whether the plaintiffs, Bongiorno Supermarket, Inc. (Bongiorno's), George Bongiorno, Frank Bongiorno and Maurice Nizzardo, were classically aggrieved by the decision of the named defendant, the zoning board of appeals of the city of Stamford (board), affirming the granting of a permit by Stamford's zoning enforcement officer to the defendants Grade A Market CT Limited Partnership (Grade A) and Stampar Associates, LLC (Stampar),[2] because a proposed supermarket would increase traffic on roadways in the vicinity of the plaintiffs' property and businesses. We conclude that, because the trial court did not find an adverse traffic impact from the defendants' proposal upon any specific personal or legal interest belonging to the plaintiffs, the court properly dismissed the plaintiffs' appeal.

The record discloses the following pertinent facts and procedural background. Stampar owns approximately 7.6 acres of property on Commerce Road in Stamford, which it proposed to lease to Grade A, and on which Grade A planned to build and operate a new supermarket. Together, in the summer of 2000, the defendants received a zoning permit from Stamford's zoning enforcement officer, allowing Grade A to construct a supermarket consisting of two buildings totaling approximately 100,000 square feet.[3] The plaintiffs

---

[1] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] We refer herein to Grade A and Stampar jointly as the defendants. Where necessary, we refer to the individual defendants by name.

[3] In 1998, the defendants had been granted a zoning permit for the construction of a new supermarket on the same site. The plaintiffs appealed from the issuance of the zoning permit to the board, which sustained the plaintiffs' appeal. The defendants thereafter appealed that decision to the trial court. While that appeal was pending, the defendants filed the permit application

Frank Bongiorno and Maurice Nizzardo own property at 198 Baxter Avenue in Stamford, where a used car dealership is located, and the plaintiffs Frank Borngiorno and George Bongiorno own property at 288 West Avenue in Stamford and operate a supermarket at that location. The Baxter Avenue property is approximately 428 feet from the Stampar property, while the West Avenue property is approximately 841 feet from the Stampar property.[4]

The plaintiffs appealed from the granting of the zoning permit to the board, which affirmed the decision. Pursuant to General Statutes §§ 8-8 (b) and 8-10,[5] the

that is the subject of this appeal. After the zoning enforcement officer issued the second zoning permit, and while the plaintiffs appeal of that decision was pending before the board, the defendants, over the plaintiffs' objection, were permitted to withdraw their appeal regarding the first permit. As a result, no judicial determination regarding whether the defendants' proposed use of the Stampar property was proper has been made, and the prior proceedings have no relevance to the determination in this appeal.

[4] Although the distance from the plaintiffs' properties to the actual site of the proposed supermarket is greater than 428 feet and 841 feet, respectively, these figures are the legally relevant distances for the purposes of this decision. See *Caltabiano* v. *Planning & Zoning Commission*, 211 Conn. 662, 667–70, 560 A.2d 975 (1989) ("land involved" under § 8-8 [a] [1] refers to entire parcel of land owned by applicant as opposed to particular piece of applicant's land upon which requested activity is to occur).

[5] General Statutes § 8-8 (b) provides: "Except as provided in subsections (c), (d) and (r) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board, including a decision to approve or deny a site plan pursuant to subsection (g) of section 8-3, may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (f) and (g) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."

Since 2001, the time of the plaintiffs' appeal in this case, § 8-8 (b) has been amended to allow appeals from the denial or approval of site plans; see Public Acts 2002, No. 02-74, § 2; and to make minor technical changes not relevant to this appeal. For purposes of convenience, we refer herein to the current revision of the statute.

plaintiffs thereafter appealed to the trial court, claiming to have been classically aggrieved. They alleged that "[t]he proposed site development will cause increased traffic, traffic hazards and traffic congestion on roadways in the immediate vicinity of the plaintiffs' real properties and businesses, thereby causing adverse traffic conditions and impacts on the plaintiffs, their customers, their businesses and their real property interests." The defendants filed a motion to dismiss the appeal for lack of subject matter jurisdiction, claiming that the plaintiffs were not aggrieved.

An evidentiary hearing was held, at the conclusion of which the trial court made several findings of fact pertaining to the potential traffic impact that have not been challenged in this appeal. The trial court examined "[t]he specific problem identified by the plaintiffs [as] the amount of traffic at the intersection of West Avenue, the street on which Bongiorno's is located, and U.S. Route #1, also known as West Main Street and as the Post Road," and found that "this intersection, which is currently causing delay for motorists, will become more crowded and cause more delay." The court remarked that the plaintiffs had acknowledged that 59 percent of Bongiorno's customers do not use the intersection at issue, "but, rather, gain access to the store by other roads."[6] The court also credited evidence produced by the defendants that even those patrons who tend nor-

General Statutes § 8-10 provides: "The provisions of sections 8-8 and 8-9 shall apply to appeals from zoning boards of appeals, zoning commissions or other final zoning authority of any municipality whether or not such municipality has adopted the provisions of this chapter and whether or not the charter of such municipality or the special act establishing zoning in such municipality contains a provision giving a right of appeal from zoning boards of appeals or zoning commissions and any provision of any special act, inconsistent with the provisions of said sections, is repealed."

[6] This percentage was derived from customer address cards, filled out at Bongiorno's, which merely provided the 06902 zip code, a substantial part of which covers property located south of the West Avenue/Route 1 intersection and Interstate 95. Our review of the record reveals that no data as to the actual routes used by customers to get to Bongiorno's was introduced.

mally to use that intersection avail themselves of alternate routes when traffic problems occur.[7] Significantly, the court neither quantified the increase in traffic nor articulated how much longer it would take Bongiorno's customers to get through the intersection during peak weekday or weekend hours.[8]

Next, the trial court noted that it was unpersuaded by the plaintiffs' evidence that the market value of their properties will be negatively impacted by the defendants' proposal. Finally, to the extent that the court understood the plaintiffs' claim regarding diminution in market value to be linked to a loss of business or profits prompted by increased competition, the court recognized that such a claim cannot form the basis of aggrievement.[9] Ultimately, the trial court determined that "while [the plaintiffs] may have a specific, personal and legal interest in the subject matter of the decision,

[7] Although not central to the aggrievement issue, the trial court noted that there existed other measures that could be taken to improve traffic flow at the subject intersection and remarked upon the fact that the state traffic commission, pursuant to General Statutes § 14-311 (a), had issued a certificate confirming that the defendants' proposal would not imperil the safety of the public.

[8] Although the plaintiffs' expert testified that he could not calculate the delay time, the defendants' expert concluded that the average delay time from increased traffic resulting from the new supermarket at peak weekday and weekend times would be one second and four seconds, respectively.

[9] The trial court opined that "the plaintiffs took this appeal because of a fear of the competition that the defendants represent," a consideration not pertinent to the question of aggrievement. See *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 127, 627 A.2d 1257 (1993) (loss of economic advantage and speculative loss of revenues insufficient to prove aggrievement). On the basis of this rumination, the plaintiffs claim on appeal that the trial court "penaliz[ed]" them "simply because they were business competitors" of the defendants, despite the fact that they otherwise had established aggrievement based on increased traffic congestion and delay that the defendants' new supermarket would generate. We read the record differently. The trial court identified the increase in competition leading to the alleged diminution in market value as one claimed source of aggrievement and the increase in traffic as another, and treated each separately.

as distinguished from a general interest, there was no evidence presented that their interests have been specially and injuriously affected. . . . The traffic congestion at the intersection in issue affects everyone passing through it, not just Bongiorno's customers. In other words, there is no specific and personal injury to the plaintiffs and/or their customers by reason of any increased traffic and delay generated by the defendants' proposal at that intersection. All that is involved is the possibility that some of Bongiorno's customers may decide to choose the proposed new supermarket because it meets their needs in a better fashion." (Citation omitted.) Accordingly, the trial court thereafter determined that the plaintiffs had not established classical aggrievement and dismissed their appeal. This appeal followed.

We necessarily begin our review of this appeal with a consideration of the plaintiffs' threshold claim that the trial court improperly failed to find that the adverse traffic impact required a determination that they were classically aggrieved.[10] It is well settled that "[p]leading

---

[10] The plaintiffs also claim that the trial court improperly failed to apply the "zone of interests" test in deciding the aggrievement issue. We have recognized the application of that test in relation to issues of standing, a related but not identical concept. See *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 255, 773 A.2d 300 (2001). "Standing concerns the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. . . . [S]ee *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 126, 627 A.2d 1257 (1993) (applying zone of interests analysis); *State* v. *Pierson*, 208 Conn. 683, 687, 546 A.2d 268 (1988), cert. denied, 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989) (standing merely requires the party to make allegations of a colorable claim of injury to an interest which is arguably protected or regulated by the statute or constitutional guarantee) . . . ." (Citations omitted; internal quotation marks omitted.) *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, 235 Conn. 334, 345, 663 A.2d 1011 (1995).

In *Richards* v. *Planning & Zoning Commission*, 170 Conn. 318, 323–24, 365 A.2d 1130 (1976), this court articulated the distinction between aggrievement and standing, and that distinction has since been reiterated.

and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. *Bakelaar* v. *West Haven*, 193 Conn. 59, 65, 475 A.2d 283 (1984). It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved. *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, 214 Conn. 726, 729, 573 A.2d 736 (1990) . . . *Beckish* v. *Manafort*, 175 Conn. 415, 419, 399 A.2d 1274 (1978). Standing [however] is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 234 Conn. 624, 637, 662 A.2d 1251 (1995).

Aggrievement presents a question of fact for the trial court and the party alleging aggrievement bears the

"*Richards* instructs us that, whereas a party claiming aggrievement submits to the court a jurisdictional question requiring the demonstration of a legally cognizable interest, i.e., a specific, personal legal interest in the subject property that is injured by a zoning decision, a party who claims standing to apply submits an issue requiring an examination of many factors, including the balancing of present and possibly future interests that require a showing that the applicant is a real party in interest. Id., 323; *Loew* v. *Falsey*, 144 Conn. 67, 74, 127 A.2d 67 (1956) (holding beneficial owner or equitable owner has standing to apply); *Antenucci* v. *Hartford Roman Catholic Diocesan Corp.*, 142 Conn. 349, 355, 114 A.2d 216 (1955) (holding mere possession, even without written lease, established standing to apply). This distinction, although subtle, is not without significance, particularly in cases involving zoning disputes." (Internal quotation marks omitted.) *Gladysz* v. *Planning & Zoning Commission*, supra, 256 Conn. 258. The defendants have not contested the plaintiffs' standing in the present case, and because the plaintiffs own property the value of which *could* have been implicated by the issuance of the defendants' permit, their standing is not at issue. Therefore, the zone of interests test is not pertinent to the resolution of the dispositive issue in this appeal, namely, whether the plaintiffs were aggrieved.

burden of proving it. See, e.g., *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 159, 699 A.2d 142 (1997); *Bakelaar* v. *West Haven*, supra, 193 Conn. 65. "We do not disturb the trial court's conclusions on appeal unless those conclusions are unsupported by the subordinate facts or otherwise violate law, logic or reason." *Harris* v. *Zoning Commission*, 259 Conn. 402, 410, 788 A.2d 1239 (2002).

The plaintiffs do not claim statutory aggrievement pursuant to § 8-8 (a) (1), which requires that they have property that abuts the subject property or is within 100 feet of that property. Rather, their claim is predicated on classical aggrievement. "The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision. . . . *Cannavo Enterprises, Inc.* v. *Burns*, 194 Conn. 43, 47, 478 A.2d 601 (1984); *Bakelaar* v. *West Haven*, [supra, 193 Conn. 65]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . . *Light Rigging Co.* v. *Dept. of Public Utility Control*, [219 Conn. 168, 173, 592 A.2d 386 (1991)]. . . . *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, supra, 234 Conn. 638." (Internal quotation marks omitted.) *Harris* v. *Zoning Commission*, supra, 259 Conn. 410–11.

In the present case, the trial court did not decide explicitly whether the plaintiffs had satisfied the first

prong of the test, that is, whether they have a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest.[11] Rather, the court turned directly to the second prong of the test and identified the two factors on which the plaintiffs relied to demonstrate that their interests had been specially and injuriously affected. The trial court quickly dismissed the increase in competition as a basis for aggrievement; see footnote 9 of this opinion; as well as the plaintiffs' claim that the market value of their properties will be negatively impacted by the defendants' proposal,[12] and turned to the plaintiffs' claim that the increase in traffic provided a legally sufficient basis for their claim of aggrievement. Distinguishing factually the cases cited by the plaintiffs, in specific, *McDermott* v. *Zoning Board of Appeals*, 150 Conn. 510, 513–14, 191 A.2d 551 (1963), and *Bright* v. *Zoning Board of Appeals*, 149 Conn. 698, 703, 183 A.2d 603 (1962), that support the proposition that aggrievement may be predicated

---

[11] The defendants claim that the plaintiffs failed to satisfy the first prong of this two part aggrievement test. Because we agree with the defendants that the trial court properly determined that the plaintiffs had failed to satisfy the second prong, we need not address the defendants' alternate ground for affirming the judgment.

[12] In the context of zoning, we have recognized that diminution of property value may establish aggrievement. See *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 380, 394, 610 A.2d 620 (1992) (depreciation in property values of real property owned by members of association in amount of 5 percent to 10 percent sufficient to support aggrievement); see also *Hyatt* v. *Zoning Board of Appeals*, 163 Conn. 379, 381, 311 A.2d 77 (1972); *Berlani* v. *Zoning Board of Appeals*, 160 Conn. 166, 168–69, 276 A.2d 780 (1970). The trial court in the present case found that the plaintiffs' "evidence on this point was not convincing." In the absence of any obligation to credit that evidence, we do not find the court's factual determination to be clearly erroneous. *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 614, 830 A.2d 164 (2003) ("[A] question of fact . . . will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." [Internal quotation marks omitted.]).

on increased traffic under certain circumstances, the trial court rejected the plaintiffs' claim of aggrievement. These cases cited by the plaintiffs continue to play a prominent role in the plaintiffs' brief to this court. Like the trial court, we are not persuaded that their facts and reasoning compel a different aggrievement determination in the present case.

In *McDermott* v. *Zoning Board of Appeals*, supra, 150 Conn. 511, the plaintiff owned and operated a gasoline station on a heavily traveled main thoroughfare between West Haven and New Haven and also owned and resided in a house located in the same general neighborhood. The defendant zoning board of appeals, acting under General Statutes §§ 14-321 and 14-322, had granted to another individual a certificate of approval for the location of a gasoline station at a site across the street and approximately 150 feet from the plaintiff's gasoline station. Id. The trial court dismissed the plaintiff's appeal from the action of the board, and the plaintiff appealed from that judgment alleging that he was a resident, property owner and taxpayer of West Haven, that he frequently traveled past the proposed location and that his property would be adversely affected by the board's approval. Id., 511–12. To sustain his burden of demonstrating aggrievement, the plaintiff offered evidence that the proposed station would be located on a curve across the street from his gasoline station, that the traffic on the street already was heavy and that another gasoline station would increase the congestion and create more traffic. Id., 513. This court held that in determining the issue of aggrievement, the trial court should not have dismissed the plaintiff's appeal merely because he was a business competitor of the proposed gasoline station's owner. Id., 514. "The mere fact that one is a business competitor does not disqualify him from being an aggrieved person for other valid reasons." Id. Rather, the trial court should have considered the

evidence of increased traffic in deciding whether the plaintiff's interests would be *substantially* and *materially* affected by the board's finding that the proposed location was suitable. Id., 513.

In *Bright* v. *Zoning Board of Appeals*, supra, 149 Conn. 700–702, the defendant developer had applied for and been granted a variance for a proposed public golf course with floodlights, a club house and a swimming pool in a residential zone where the plaintiffs lived. One concern of the plaintiffs on appeal and ultimately found by the trial court was that the proposed "use [of] the property for a business within a residential area would reduce the value of surrounding properties, create traffic hazards and endanger the public safety and hence would not be in harmony with the general purpose and intent of the zoning regulations." Id., 703. Although the trial court in sustaining the appeals had failed to make an express finding on the issue of aggrievement, this court reviewed the record and upheld the trial court's judgment, noting that two of the plaintiffs lived 150 feet away and one house removed from the site of the project, while three other plaintiffs were 400, 500 and 650 feet away, respectively, and that all of the plaintiffs were neighbors in the same residential zone. Id., 704. No specific reference was made to the issue of traffic or reduction in market value as a basis for the aggrievement determination. Therefore, *Bright* provides little guidance on the issue of traffic as a basis for aggrievement other than to recognize that an increase in traffic *can* provide a source for a determination of aggrievement.

In order to prevail on the issue of aggrievement, "[t]he trial court must be satisfied, first, that the plaintiff alleges facts which, if proven, would constitute aggrievement as a matter of law, and, second, that the plaintiff proves the truth of those factual allegations. . . . The mere statement that the appellant is aggrieved,

without supporting allegations as to the particular nature of the aggrievement, is insufficient." (Citation omitted; internal quotation marks omitted.) *Beckish* v. *Manafort*, supra, 175 Conn. 419.

The trial court in the present case recognized that traffic *could* be the predicate for a determination of aggrievement, but whether traffic congestion in the vicinity of a parcel of land is sufficient to meet the test depends on the facts and circumstances of each case. In this case, the trial court identified the crowded intersection of West Avenue and Route 1 and noted its location on the north side of Interstate 95 as being "a quarter mile or so from the plaintiffs' properties." The court further noted that Interstate 95 separates the defendants' property from the plaintiffs' properties. Against this factual background, the court did not make a finding that the plaintiffs' specific and personal interests would suffer an adverse traffic impact as a result of the defendants' proposed supermarket. Rather, at most, the court found that the subject intersection will become more congested for *everyone* passing through it, including, but not limited to, those customers of the plaintiffs who choose not to use alternate routes. As noted by the court, this delay will affect the plaintiffs' customers in the same manner as it affects all members of the general public who use the intersection. Therefore, the interest in this delay belongs to the general public as well as to the plaintiffs' customers on whose behalf the plaintiffs can not act. See *Stamford Hospital* v. *Vega*, 236 Conn. 646, 657, 674 A.2d 821 (1996) ("[i]n general, a party does not have standing to raise rights belonging to another"). Moreover, this added congestion was not quantified in terms of delay, and the trial court never found that any such delay would be substantial. Therefore, the court's findings merely reflect that the plaintiffs own property near an intersection that will be more congested as a result of the defendants'

proposal. Accordingly, the trial court properly determined that any specific personal and legal interest the plaintiffs had in the subject matter had not been specially and injuriously affected by the board's decision affirming the decision to grant the defendants' application for a permit.

The judgment is affirmed.

In this opinion the other justices concurred.