DANIEL M. GOLDFISHER *v.* CONNECTICUT SITING
COUNCIL ET AL.
(AC 26303)

Flynn, C. J., and Bishop and Stoughton, Js.

Argued February 15—officially released May 2, 2006

*Daniel M. Goldfisher*, pro se, the appellant (plaintiff).

*Robert L. Marconi*, assistant attorney general, for the appellee (named defendant).

*David M. Sheridan*, with whom, on the brief, was *Peter J. Tyrell*, for the appellee (defendant Message Center Management, Inc.).

*Opinion*

BISHOP, J. The dispositive issue in this appeal is whether the trial court correctly dismissed the administrative appeal by the plaintiff, Daniel M. Goldfisher, from the decision by the Connecticut siting council (siting council) on the basis that the plaintiff was not

aggrieved.[1] We affirm the judgment dismissing the plaintiff's administrative appeal.

The record discloses the following pertinent facts and procedural background. The plaintiff is the owner of real property at 13 West Cove Road in East Haddam. On or about April 21, 2003, the defendant Message Center Management, Inc. (Message Center), filed an application with the siting council for the construction, operation and maintenance of a 190 foot cellular tower proposed to be located at 169 Trowbridge Road in East Haddam. The plaintiff's property is located approximately 3500 feet (two-thirds of a mile) from the proposed tower. The siting council held a public hearing in East Haddam on July 10, 2003. At the conclusion of the hearing, the siting council closed the record and the taking of evidence. On July 17, 2003, the plaintiff petitioned the siting council for intervenor status and was granted that status on July 22, 2003. Thereafter, the plaintiff submitted several requests to the siting council, including the request to open the hearing for the purpose of taking additional evidence. The siting council denied the request to open the hearing and, subsequently, on or about September 26, 2003, rendered its decision approving the construction of the cellular tower with a height restriction of 175 feet.

The plaintiff appealed to the Superior Court from the siting council's decision granting the permit to build the tower. Claiming to have been classically aggrieved, the plaintiff alleged that the proposed tower and associated equipment facility would have a significant adverse impact on the residential quality and property values in the area of the proposed site. Additionally, the plaintiff alleged that the tower would adversely affect the natural environment by altering its ecological balance, that it

---

[1] Because we agree with the court that the issue of aggrievement was fatal to the plaintiff's administrative appeal, we do not reach his other claims.

would be detrimental to public health and safety by negatively impacting air and water purity, fish aquaculture and wildlife habitat, and that it would adversely affect the scenic, historic and recreational resources of the area. The plaintiff further claimed that he was aggrieved by virtue of his ownership interest in residential property, the fair market value of which he claimed would likely be diminished by the construction of the proposed tower, and that the proposed tower would have a visual impact on his property that would impair his use and enjoyment of the property. On this basis, the plaintiff contended that he had a specific personal and legal interest in the subject matter of the decision of the siting council.

After an evidentiary hearing was held, the court found that the plaintiff had failed to present any evidence that the proposed cellular tower would have any effect on the natural environment, its ecological balance, the public health and safety or the scenic, historic and recreational values of the area likely to be affected by the construction of the tower. The court further found that the claim made by the plaintiff as to the diminution in his property value was speculative and not supported by the credible testimony presented at the hearing. Accordingly, the court concluded that the plaintiff had not established that he had a specific legal interest in the subject matter of the decision of the siting council or that he had been deprived of any use or enjoyment of his property. Finding that the plaintiff was not aggrieved, the court dismissed his claim. This appeal followed.

"It is well settled that [p]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. . . . It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved. . . . Aggrievement presents a ques-

tion of fact for the trial court and the party alleging aggrievement bears the burden of proving it. . . . We do not disturb the trial court's conclusions on appeal unless those conclusions are unsupported by the subordinate facts or otherwise violate law, logic or reason." (Citations omitted; internal quotation marks omitted.) *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals*, 266 Conn. 531, 537–39, 833 A.2d 883 (2003).

"Classical aggrievement . . . requires an analysis of the particular facts of the case in order to ascertain whether a party has been aggrieved and, therefore, has standing to appeal. (Internal quotation marks omitted.) *Shockley* v. *Okeke*, 92 Conn. App. 76, 80, 882 A.2d 1244 (2005). "The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) *Foster* v. *Smith*, 91 Conn. App. 528, 533–34, 881 A.2d 497 (2005). Finally, as to the quality and quantum of evidence required to establish aggrievement, an appellant need not establish his or her interest and harm with certainty, but rather, may satisfy the requirement of aggrievement by credible proof that the subject activity has resulted in the possibility of harm to his or her specific personal and legal interest. "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 370, 880 A.2d 138

(2005). A fair reading of relevant decisional law makes it clear, nevertheless, that proof of a possibility of specific harm is not the same as mere speculation regarding harm. See *Nader* v. *Altermatt*, 166 Conn. 43, 347 A.2d 89 (1974). Although one may establish aggrievement by establishing the possibility of harm, mere speculation that harm may ensue is not an adequate basis for finding aggrievement.

On appeal, the plaintiff claims that evidence adduced at the hearing regarding his potential for economic loss was sufficient to establish a specific interest in the subject matter of the siting council's decision. The plaintiff claims, as well, that the court improperly found that his claim as to diminution in the value of his property was speculative. We are not persuaded.

We have recognized that "[a]n economic interest that is injuriously affected may afford a basis for aggrievement . . . as long as the economic deprivation is not speculative." (Citation omitted.) *Levine* v. *Police Commission*, 28 Conn. App. 344, 355, 612 A.2d 787, cert. denied, 223 Conn. 923, 614 A.2d 823 (1992).

In this case, the plaintiff testified that from his residence, there is a special and somewhat unique view across the Moodus reservoir of a tree line with foliage and vegetation, the enjoyment of which would be lessened by the construction of the proposed cellular tower. The plaintiff claimed that the alteration of the view from his residence would, in turn, reduce the economic value of his property. In support of his claim, the plaintiff presented two witnesses, in addition to himself. Nicole Fournier, a neighbor of the plaintiff's, testified that if she had known about the proposed tower while negotiating for the purchase of her home, she would have offered a lower price for it. She was unable to state, however, whether she would have declined to purchase her home if the seller had refused

to lower the price. The plaintiff's expert appraiser, Peter Vimini, testified that the "location itself, the mountain view, the water view and access to the water have positive influences on [the] value" of the plaintiff's property, and "in all likelihood or probability, there would be a diminution of value" of the plaintiff's property if the tower was constructed. As noted by the court, Vimini did not provide any empirical data to support his opinion and did not conduct his own investigation. Rather, in offering his opinion, Vimini relied on the report of another appraiser, who did not testify at the hearing. Thus, the court opined, the plaintiff did not present any testimony or evidence from which it could have gleaned the extent of the claimed effect on the value of the plaintiff's property occasioned by construction of the tower.

In contrast, the Message Center presented expert testimony from Arthur B. Estrada, also a real estate appraiser. Estrada opined that the tower would not have a negative impact on the plaintiff's property. Unlike the testimony offered by the plaintiff's expert, Estrada based his opinion on historic data gleaned from similar towers constructed in other towns and the impact of these towers on the values of surrounding properties.[2]

In assessing the evidence, the court found that the plaintiff's claim of harm was merely speculative. In coming to this conclusion, the court made factual findings that are supported by the record. Thus, the court's conclusion that the plaintiff failed to demonstrate aggrievement was not clearly erroneous. Because spe-

---

[2] In further support of his opinion that the tower would not have an adverse impact on the value of the plaintiff's property, Estrada also testified that the house of the plaintiff's neighbor, which is similar in size, design and acreage, sold for $408,000 in April, 2004. The plaintiff bought his home in 2003 for $335,000. The $408,000 sales price represented an annual increase in property values of 22 percent, which was consistent with the general price increases in homes in East Haddam for that period of time.

cific detriment to a legal interest is the lynchpin of classical aggrievement, the court properly determined that the plaintiff did not have a cognizable interest in the decision of the siting council. Accordingly, we conclude that the court properly dismissed the plaintiff's appeal.

The judgment is affirmed.

In this opinion the other judges concurred.