MEMORANDUM OF DECISION
PAUL M. GUERNSEY, Chief Judge.
The Plaintiff, a registered voter of The Mohegan Tribe who had filed a complaint with the Defendant Election Committee challenging its handling of a Special Election conducted to fill a vacancy on the Tribal Council, appeals from the Defendant’s finding of no probable cause and dismissal of his complaint.[1]
*381 A summary of the events giving rise to the instant litigation is contained in the earlier decision of this Court on Plaintiffs Motion(s) for Leave to Present Additional Evidence. In brief, a vacancy on the Tribal Council was created when Tribal Council Chairperson Lynn Malerba was appointed Chief of The Mohegan Tribe. A primary election for this vacancy was held and the two top vote getters were announced on September 16, 2010. On September 23, 2010 ballots were mailed to registered voters of the Tribe listing these two candidates. On October 8, 2010, one of the candidates notified the Election Committee in writing that “I would like to withdraw my name from this election.”[2] By this time, approximately seventy ballots had already been returned by U.S. mail to the Election Committee.[3] On October 11, 2010, the Election Committee advised the candidate that it could not withdraw his name from the Special Election, and advised the members of the Tribe via e-mail and the Tribal Member Website that both candidates remained on the ballot. The results of the election were announced on October 17, 2010, with the candidate who attempted to withdraw losing by a vote of 228 to 352.
Plaintiffs complaint to the Election Committee pursuant to MTC § 1-215 was timely filed on November 5, 2010.[4] The essence of this complaint challenged the decision of the Election Committee not to allow a candidate to withdraw from the general election, arguing that this decision interfered with numerous (implied) rights on the part of candidates and voters, ranging from the right of prospective candidates to run for office (or not to run) to the right of registered voters to have before them the proper number of actual (not theoretical) candidates. The Election Committee considered each alleged violation and concluded that no probable cause existed, and dismissed the complaint.[5]
DISCUSSION

A. Standard of Review

Section l~217(e) of the Mohegan Tribe Code specifies that the “decision of the Election Committee shall not be overturned unless the Tribal Court finds that the decision of the Election Committee is arbitrary, capricious, an abuse of discre *382 tion, or otherwise not in accordance with Tribal law,” This standard is similar to that set forth in MTC § 3-224(j)(6) and Conn. Gen.Stat. § 4—183(g), except for the addition of “otherwise not in accordance with Tribal law.” The extent to which this last phrase incorporates standards (1) through (4) of MTC § 3-224(j) is not at issue in this case in that all parties agree that the Election Code simply did not, at the time, provide for the situation confronting the Defendant as a result of the withdrawal of one of the two candidates.
As for which party bears the burden of proof in these proceedings, the law is clear: “It is fundamental that a plaintiff has the burden of proving that the [defendant], on the facts before him, acted contrary to law and in abuse of his discretion.... The law is also well established that if the decision of the [defendant] is reasonably supported by the evidence it must be sustained.” (Citations omitted; internal quotation marks omitted.)
American Car Rental, Inc. v. Commissioner of Consumer Protection, 273 Conn. 296, 308, 869 A.2d 1198 (2005), quoting Murphy v. Commissioner of Motor Vehicles, 254 Conn. 333, 343-44, 757 A.2d 561 (2000); accord, Spruill v. Office of the Director of Regulation, 2 G.D.R. 1, 2, 4 Am. Tribal Law 540 (2003).

II Standing

The initial issue in this case concerns the Defendant’s challenge to the Plaintiffs standing even to bring this action. The provision for appealing a decision of the Election Committee to the Mohegan Tribal Court, in its entirety, reads as follows:
An aggrieved party shall have the right to appeal a decision of the Election Committee to the Tribal Court within seven (7) working days following the Election Committee’s decision. A decision of the Election Committee shall not be overturned unless the Tribal Court finds that the decision of the Election Committee is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with Tribal law.
MTC § l-207(c). The Defendant argues that the Plaintiff must show some form of personal aggrievement in order to have standing, and further that the Election Code does not provide for the appeal to the Tribal Court from a finding of no probable cause, only from the decision of the Election Committee after a hearing. Neither argument is persuasive.
No one disputes that the Plaintiff was not a candidate in either the primary or the general election, nor is it disputed that the Plaintiff is a “Tribal member who is registered to vote.” Standing to file a complaint with the Election Committee is conferred on the following persons:
Prior to, or after, the counting of ballots, any Tribal member who is a registered voter, may file a written complaint with the Election Committee alleging a violation of any provision of this Article or of the Election Committee standards and procedures to campaign, Election Procedures of SOPs. Any member of the Election Committee who has reason to believe that a violation of any provision of this Article or of the Election Committee standards and procedures to campaign, Election Procedures of SOPs has occurred shall file a written complaint alleging such violation to the full Election Committee.
MTC § l-215(a). The Defendant does not argue that the Plaintiff had no standing to file the complaint, but rather that he has no standing as an “aggrieved party” to appeal from the dismissal of his own complaint.
The Defendant’s argument on standing to appeal ignores a significant distinction *383 between MTC § 4-221 et seq. (“Appeal from Final Agency Decisions”), Conn. Gen. Stat. § 4-183, and MTC § l-217(c). The sections dealing with administrative appeals in general confer standing to appeal on “[a] person who is aggrieved by a Final Agency Decision,” MTC § 3-224(a), and “a person who has exhausted all administrative remedies within the agency and who is aggrieved by a final decision,” Conn. Gen. Stat. § 4-183(a). This section of Tribal law under which the instant appeal is taken, however, refers instead to “[a]n aggrieved party,” an obvious reference to a party to the hearings involving “notified interested person[s].” MTC § l-217(a)~ (c). Thus, the elimination of members of the public with no personal interest in the proceedings[6] is largely accomplished by limiting appeals to parties rather than persons.
The issue then becomes whether the Tribal Council intended further limitations on standing to appeal beyond those of being a member of The Mohegan Tribe, a registered voter and a party to the proceedings before the Election Committee. The structure of the Election Committee complaint procedure, from a finding of probable cause to the evidentiary hearing, strongly suggests that the intended meaning of “an aggrieved party” is that governing appeals generally:
Sec. 61-1. Right of Appeal. An aggrieved party may appeal from a final judgment, except as otherwise provided by law.
Conn. Prac. Bk. § 61-1; accord, M.R.A.P. Rule 2. There is no basis for concluding that the Tribal Council, in enacting MTC § l-217(c), intended any further limitation on the rights of registered voters of The Mohegan Tribe to appeal adverse determinations of their own complaints properly filed with the Election Committee beyond those specified in the ordinance, A decision of the Election Committee adverse to a party’s complaint is sufficient to confer standing to appeal pursuant to MTC § 1-217(c).[7]
As for restricting the right to appeal only to decisions of the Election Committee rendered after hearing, rather than to a dismissal following a determination of no probable cause, this Court is similarly not persuaded, especially in the instant case where there never were any facts in dispute and therefore no need for a hearing to be held pursuant to MTC § l-217(a). In any event, the precise language of MTC § 4-217(c) confers the “right to appeal a decision of the Election Committee” and does not specify that such decision be rendered after a hearing. No authority has been advanced that a decision dismissing a complaint is not a final decision, nor has any logical reason been called to the Court’s attention why such a further limitation on the appeal rights of Tribal registered voters was ever intended by the Tribal Council.

C. Refusal to Allow Withdrawal of Candidate

Plaintiff strenuously attacks the Defendant’s refusal to recognize one candidate’s attempt to withdraw from the general election after receiving the highest number of votes in the primary election, arguing that this was arbitrary and capricious and with *384 out statutory authority. Viewed in isolation, there is merit to this position. No authority has been cited by the Defendant for the proposition that a candidate is not free to withdraw his candidacy,[8] and it is something of a mystery why the Defendant, given the absence of Tribal law on the subject, did not follow the example of Connecticut procedure in dealing with the withdrawal of a candidate after the distribution of absentee ballots:
(j) In the counting of absentee ballots the intent of the voter shall govern, provided the following conclusive presumptions, where applicable, shall prevail in determining such intent:
(2) If the name of a candidate who has vacated his candidacy is checked such vote shall not be counted.
Conn. Gen.Stat. § 9-150a(j). In the alternative, the Defendant could have followed the example of an earlier primary election for the Council of Elders that was the subject of Plaintiffs Motions for Leave to Present Additional Evidence, where voters were advised that a candidate had withdrawn and that ballots should not be cast for such candidate.
Plaintiff takes umbrage at the Defendant’s allegedly misleading statements to voters that the two individuals remained candidates. The actions of the Defendant, however, were not taken in a vacuum. By the time of the attempted withdrawal, the election not only had been commenced within the statutorily mandated period[9] and the general election ballots distributed to the Tribe’s registered voters, but also seventy of these had already been returned. There existed no statutory authority for the Defendant to call a halt to the election and restart the general election process.[10] While it is possible that a wiser course of action might have been either of the alternative approaches discussed above, there is no denying that the Defendant faced a situation for which the Election Code provided virtually no guidance.
At the heart of this issue is a matter of legislative policy that the Defendant Election Committee was powerless to resolve: upon the conclusion of the primary election to fill one vacancy on the Tribal Council, was the person to fill that vacancy to be one of two top vote getters who had advanced to the general election (a conclusion consistent with the language of MTC § 1—208(b) as it then existed) or, in the alternative, if an event occurred that would make the contest between the two top vote getters essentially meaningless, should the general election be cancelled and re-started with a revised list of the two top vote getters? [11]
*385 In this case, the registered voters of The Mohegan Tribe elected the candidate who would have prevailed had the Defendant either notified the voters that his opponent had withdrawn, as in the 2006 Council of Elders primary, or followed Connecticut procedure under Conn. Gen.Stat. § 9—150a(j) by not counting ballots cast for a withdrawn candidate. Any error in not notifying the voters of the wish of one candidate to withdraw, if in fact the same was in error, -was therefore harmless. “Harmless error analysis is available in the administrative context.” Levy v. Commission on Human Rights and Opportunities, 236 Conn. 96, 110, 671 A.2d 349 (1996); “[t]he harmless error standard in a civil case is whether the improper ruling would likely affect the result.” (Internal quotation marks omitted.) Smith v. Andrews, 289 Conn. 61, 68, 959 A.2d 597 (2008).
Turning to the underlying question (now resolved for future elections [12]) as to whether the withdrawal of one a candidate selected in a primary election vitiates an ongoing general election, the same clearly presented a question of legislative policy. The issue for this Court is not whether the decision of the Defendant to continue a general election already in progress was the best exercise of its judgment, but rather whether the same was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with Tribal law. The Plaintiff has not shown that it was.
The issues raised by the Plaintiff in this case were far from frivolous and served to illuminate a gap that previously existed in the legislative framework for Tribal Elections. The Defendant was faced with a difficult decision on an issue nowhere addressed in the Election Code. While it may have been preferable to communicate to Tribal voters the issues surrounding one of the candidate’s intentions, thus allowing a more informed vote, failure to do so under the circumstances of this case is not cause for setting aside the Defendant’s determination of no probable cause, and in any event if erroneous was harmless given the outcome of the general election.
Judgment shall enter for the Defendant.

. Under the Mohegan Tribe Code, the conduct of elections is entrusted to the Election Committee, which "shall enjoy complete autonomy in the exercise of its duties and obligations.” MTC § l-201(c). These duties include determining the eligibility of candidates, printing and distributing the official ballots for the election, establishing standards and procedures by which candidates may campaign, and announcing the results of the election. MTC § l-201(f). A primary election is conducted ‘‘[w]here there are more than twice as many prospective candidates for the number of positions available,” MTC § 1-208(a), and from the primary results the maximum of candidates running in the general election shall be twice the number of positions available. MTC § 1-208(b). For both the primary and the general election itself, the Election Committee is charged with mailing a ballot and a numbered, self-addressed, security return envelope to each Tribal member qualified to vote at least twenty-one days prior to the *381 election, and such ballots are then returned by the Tribal member using U.S. Mail or deposited directly into the ballot box. MTC § 1-205.

. Letter of Michael A. Bozsum to Election Committee dated October 6, 2010.

. Decision of Mohegan Tribe Election Committee, February 4, 2011, Findings of Fact Paragraph 11.

. "Any complaint brought pursuant to the provisions of this Section must be postmarked or hand delivered to the Election Committee within twenty (20) days (excluding Saturday, Sunday and holidays recognized by the Mohegan Tribe, hereinafter "working days”) after the complainant has become aware, or reasonably should have become aware, of the alleged violation MTC § 1-215(d).

.MTC § 1-215 establishes a two stage process for dealing with complaints to the Election Committee. Initially, "any Tribal member who is a registered voter” or any member of the Election Committee may file a written complaint, which is thereupon investigated by the Election Committee. If "probable cause” (to establish a violation of Article II or of Election Committee standards, procedures to campaign, Election Procedures of SOPs) is found to exist, notice is to be given to the person against whom the allegation has been made, and the matter may progress to a formal hearing if not otherwise resolved. This section of the Election Code clearly contemplates that such a complaint will be filed against someone other than the Election Committee itself.

. Goldfisher v. Connecticut Siting Council, 95 Conn.App. 193, 895 A.2d 286 (2006), cited by the Defendant, for instance, involved a cell tower approval being challenged by a landowner whose property was 3,500 feet away.

. It is unnecessary in this case to decide what appellate rights, if any, are held by non-party "notified interested person[s],” but in such situations Defendant’s arguments regarding standing might well have greater applicability-

. It should be emphasized that all parties are in agreement that there was absolutely no collusion or improper motive of any kind in the decision of the candidate to attempt to withdraw from the general election.

. MTC § 1-210 requires that a special election shall be on a date within sixty days of the vacancy. Plaintiff's initial challenge to the date of the election has not been briefed, and is deemed abandoned.

. This would not have been the case had the Election Committee found a violation of the Election Code; in such case the Election Committee does have the authority to order a new election. MTC § 1-216(e)(2). A candidate’s good faith attempt to withdraw his candidacy is not an Election Code violation. See fn. 8.

.Supporting the Defendant's decision to allow the already-commenced general election to proceed is the arguably inconclusive language of the attempted withdrawal. Technically, the candidate did not echo William Tecumseh Sherman by stating "If nominated, I will not run; If elected, I will not serve;” (apparently most authorities maintain that these were not his exact words), although a *385 fair reading of “I wish to withdraw my name from this election” is that he would not serve if elected. In that situation, at least the Defendant would have the provisions MTC § 1-210 ‘‘Special Election to Fill Vacancy” to follow for the second election. The actions of the Defendant in allowing the election to proceed are similar to that of a judge reserving decision on a motion for judgment of acquittal and submitting the case to the jury; the decision of the jury may make ruling on the motion unnecessary. See Conn. Prac. Bk. § 42-40.

. The Election Code was thereafter amended explicitly to allow the withdrawal of a candidate from a primary election but not thereafter from a general election, essentially adopting the procedure that was followed in this case. MTC § 1-208. It should be emphasized that this amendment played no part in the Court’s holding in this case.