TOWN OF WALLINGFORD *v.* ZONING BOARD OF
APPEALS OF THE CITY OF
MERIDEN ET AL.
(AC 34108)

Lavine, Sheldon and Pellegrino, Js.

568

Argued May 16—officially released November 5, 2013

*Janis M. Small*, corporation counsel, for the appellant (plaintiff).

*Thomas J. Londregan*, with whom, on the brief, was *Patrick J. Day*, for the appellee (named defendant).

*Opinion*

LAVINE, J. The plaintiff, the town of Wallingford, appeals from the judgment of the trial court dismissing its zoning appeal from the decision of the defendant[1] Zoning Board of Appeals of the city of Meriden (board) for lack of subject matter jurisdiction. The plaintiff contends that the trial court, by declining to find that the plaintiff was aggrieved, erred in granting the motion to dismiss. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. In 2008, the defendant Mark Development, LLC (developer), applied for a use variance from the board for a 48.8 acre parcel of land located at 850 Murdock Avenue in Meriden (property). The property is bounded on the south by Wallingford. The property is zoned as a regional development district, wherein permissible uses are limited to conference center hotels, executive offices, research and development

---

[1] Mark Development, LLC, was also a defendant before the trial court, but is not a party to the present appeal.

facilities, and distribution centers associated with executive offices. The developer, seeking the use variance in order to construct a used car lot on the property, submitted its application for the variance on August 14, 2008. The application included a conceptual site plan that made reference to a traffic plan that would ultimately make Northup Road in Wallingford the primary access point to the property. A hearing before the board occurred on September 2, 2008, at which point Linda Bush, the Wallingford town planner, raised the plaintiff's concern that the conceptual site plan directs too much traffic into Wallingford.[2] Following the hearing, the board voted 4-1 to grant the use variance on September 2, 2008.

Thereafter, the city of Meriden, the Meriden Planning Commission and its director of planning, Dominick Caruso (*Caruso* plaintiffs), appealed to the trial court. In that action, the *Caruso* plaintiffs alleged (1) that the use variance was illegal, arbitrary, an abuse of discretion, and ultra vires because a member of the board had a conflict of interest requiring his recusal, and (2) that the decision of the board was not supported by the record. See *Caruso* v. *Zoning Board of Appeals*, Superior Court, judicial district of New Haven, Docket No. CV-08-4033705 (August 9, 2012) (54 Conn L. Rptr. 505). The plaintiff also appealed, claiming that the use variance was not supported by the record.[3] The appeals to the trial court were eventually consolidated.

The board filed a motion to dismiss, asserting that neither the *Caruso* plaintiffs nor the plaintiff in the

[2] The plaintiff's concern with respect to the traffic plan was generalized. At the board's hearing on the variance application, Bush testified that because the conceptual site plan envisioned access to the property from Northup Road in Wallingford, "we will be impacted if you grant this variance, because all of the traffic will use our roads."

[3] The plaintiff alleged, specifically, that "the [board] failed to provide any reason for its approval of the variance [and that] . . . the decision of the [board] was illegal, arbitrary and capricious and in an abuse of discretion . . . ."

present case were aggrieved by its decision. The court denied the motion to dismiss as to the *Caruso* plaintiffs, but granted the motion as to the plaintiff in the present case. The court found that the plaintiff in the present case was neither classically nor statutorily aggrieved by the board's decision.[4]

The *Caruso* case proceeded to a judgment on the merits. In its memorandum of decision, the trial court opined first on the merits of the board's decision, finding that the decision was supported by the record and that the board had not exceeded its authority in granting the application.[5] Next, the court addressed the issue of whether a conflict should have disqualified a board member from voting on the developer's application. The court found that the conflicted board member should have disqualified himself. Accordingly, the court sustained the *Caruso* plaintiffs' appeal and remanded the matter to the board for "further proceedings." See *Caruso* v. *Zoning Board of Appeals*, supra, 54 Conn. L. Rptr. 508.

The board filed a motion to reargue, requesting that the court "further clarify what it meant by 'for further

[4] The plaintiff did not expressly indicate whether it believed it was statutorily aggrieved or classically aggrieved, but alleged facts grounded in both theories. For instance, the plaintiff alleged it was aggrieved "by the [board's] decision in that the property of the [developer] borders the Town of Wallingford . . . the [developer's] property abuts the Town of Wallingford property, Northrop Road; the [developer] proposes to design its entrance to its property in such a way as to require large trucks to only use Wallingford roads."

[5] "The record supports the conclusion that the property, which has been vacant and unused for close to thirty years, cannot be practically used in any of the ways permitted by the regulations. Additionally, the record supports the finding that allowing the use of the property for a used car dealership will not thwart the purposes of the zoning regulations. Finally, there is evidence in the record that the other required considerations were met. . . . Therefore, this court concludes that the insufficiency of support in the Record is not a proper basis to sustain the appeal. Nor is the claim that the board exceeded its authority in granting the application for a use variance to use the property as a Used Car Dealership." (Citations omitted.)

proceedings.' " The board also requested that, because the court had already determined the merits of the board's decision on the application and two alternate members of the board could read the transcripts of the record, "further proceedings" be limited to a new vote on the existing record by a reconstituted board instead of an entirely new hearing. The court granted the motion on September 10, 2012, ordering that no new evidence be introduced and that the board render a new decision pursuant to a review of the existing record by alternate members of the board.

Subsequently, the developer filed a petition for certification to appeal the trial court's decision in *Caruso* on August 30, 2012, seeking review of the trial court's decision only on the issue of conflict. The *Caruso* plaintiffs also filed a cross petition on September 20, 2012, seeking review of (1) the trial court's ruling on the merits, and (2) its decision to address the merits while concurrently finding that the vote by a conflicted board member required that the application be remanded to the board.

The plaintiff filed its own certified appeal, in the present case, claiming that the trial court erred when it granted the board's motion to dismiss. Argument before this court in the present appeal was first heard on January 3, 2013, while the petitions for the *Caruso* appeal were pending. At that time, this panel questioned whether the present appeal was properly before us. Following oral argument, we ordered the parties to brief the issue as to whether the present appeal was justiciable given the trial court's decision in *Caruso* and the pendency of the petitions to appeal in that case. The petitions for certification in the *Caruso* appeal were granted on January 16, 2013.

I

Before we can address the merits of the plaintiff's claims, we must determine whether we have subject

matter jurisdiction to hear this appeal. Accordingly, at the threshold of this appeal, we are presented with a question of justiciability, specifically, whether the trial court's decision in *Caruso* has rendered the present matter moot. The board takes the position that this appeal is moot because, in *Caruso*, all the underlying zoning issues were decided against the plaintiff, and, as a consequence, the plaintiff cannot obtain any practical relief from this court. The plaintiff takes the opposing position, asserting that *Caruso* did not render its appeal moot because, if the trial court's decision on the motion to dismiss is overturned, it would be allowed to present its own arguments challenging the use variance. We agree with the plaintiff that this appeal is not moot.

"The doctrine of mootness is rooted in the same policy interests as the doctrine of standing, namely, to assure the vigorous presentation of arguments concerning the matter at issue." *State* v. *McElveen*, 261 Conn. 198, 204, 802 A.2d 74 (2002). Our Supreme Court has enunciated a four part test in order to determine whether a matter is justiciable. "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *Board of Education* v. *Naugatuck*, 257 Conn. 409, 416, 778 A.2d 862 (2001). Furthermore, "[a]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . [Thus] [w]hen, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks

omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 492–93, 778 A.2d 33 (2001).

In the present matter, the board argues that this court cannot grant practical relief. The board contends that even if this court were to decide that the plaintiff was aggrieved by the board's decision, because the merits of the use variance were already adjudicated by the trial court, this court cannot grant practical relief. This argument is not persuasive. As one of the issues in the *Caruso* appeal relates to the merits of the use variance, the plaintiff would be able to obtain relief if this court were to find the plaintiff aggrieved. Under that scenario, the plaintiff would be entitled to join in the *Caruso* appeal as to the merits of the use variance. In short, if the plaintiff's claim on appeal were dismissed as moot, it would lose its opportunity to potentially litigate the merits of the use variance that is currently at issue in *Caruso*. See, e.g., *State* v. *T.D.*, 286 Conn. 353, 366–67, 944 A.2d 288 (2008) (controversy kept alive because of contemporaneous appeals). Accordingly, the plaintiff's appeal is not moot.

## II

We now turn to the primary issue in this appeal, that is, whether the trial court erred in dismissing the plaintiff's appeal. On appeal, the plaintiff argues that the court improperly determined that it was not aggrieved by the board's decision granting the use variance because (1) the plaintiff was classically aggrieved by the possibility of increased traffic on its roads, and (2) it was statutorily aggrieved as a "municipality concerned." We are not persuaded by the plaintiff's arguments, and therefore, affirm the judgment of the trial court.

We begin by setting forth the standard of review and principles of law that govern our analysis. "Because a determination regarding the trial court's subject matter

jurisdiction raises a question of law, our review is plenary." (Internal quotation marks omitted.) *Abel* v. *Planning & Zoning Commission*, 297 Conn. 414, 437, 998 A.2d 1149 (2010). "It is well settled that [p]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. . . . It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved. . . . Aggrievement presents a question of fact for the trial court and the party alleging aggrievement bears the burden of proving it. . . . We do not disturb the trial court's conclusions on appeal unless those conclusions are unsupported by the subordinate facts or otherwise violate law, logic or reason." (Citations omitted; internal quotation marks omitted.) *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals*, 266 Conn. 531, 537–39, 833 A.2d 883 (2003).

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. *Hall* v. *Planning Commission*, 181 Conn. 442, 444, 435 A.2d 975 (1980). Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest. . . . Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Citations omitted.) *Lewis* v. *Planning & Zoning Commission*, 62 Conn. App. 284, 288, 771 A.2d 167 (2001).

"Finally, as to the quality and quantum of evidence required to establish aggrievement, an appellant need not establish his or her interest and harm with certainty,

but rather, may satisfy the requirement of aggrievement by credible proof that the subject activity has resulted in the possibility of harm to his or her specific personal and legal interest. Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . . A fair reading of relevant decisional law makes it clear, nevertheless, that proof of a possibility of specific harm is not the same as mere speculation regarding harm. . . . Although one may establish aggrievement by establishing the possibility of harm, mere speculation that harm may ensue is not an adequate basis for finding aggrievement." (Citations omitted; internal quotation marks omitted.) *Goldfisher* v. *Connecticut Siting Council*, 95 Conn. App. 193, 197–98, 895 A.2d 286 (2006).

On appeal, the plaintiff maintains that it was aggrieved by the board's action both classically and statutorily. We first consider classical aggrievement.

The plaintiff's principal argument is that the granting of the use variance will cause it harm by increasing traffic on its roadways. This increased traffic is anticipated on the basis of the conceptual site plan that was presented by the developer to the board. The conceptual plan featured a traffic plan that ultimately funneled the bulk of truck traffic through the plaintiff's streets and away from Meriden. We disagree with the plaintiff that, at this juncture, it is aggrieved by the use variance.

The trial court considered the two part classical aggrievement inquiry. First, it found that "traffic hazards and traffic congestions may constitute valid legal grounds for aggrievement." Turning to the second prong, however, the court noted that "the plaintiff has failed to establish that it has been specifically, personally, and legally affected by the [board's] approval of the use." The trial court based this conclusion on the

fact that the site plan giving rise to traffic concerns had not been approved by the board and that "therefore, the developer is not allowed, yet, to begin developing or building upon the land." The court concluded that the plaintiff was not yet injured.

Upon our examination of the record, we cannot conclude that the court's conclusions were unsupported by the facts of this case or otherwise violate law. Rather, its judgment appears to be well supported and manifestly correct. Put simply, the plaintiff's concerns as to traffic are, at present, premature. As the origin of the plaintiff's claimed aggrievement is the proposed site plan, and given that the board lacked the authority to approve a site plan in the application for a use variance, the issue of where the traffic would be directed was not formally decided upon.[6] In other words, the plaintiff's failure to show how it is injured by the use variance itself is what precludes a finding of aggrievement in this case. Instead, the plaintiff claims aggrievement based on a mere proposal, which at this moment in time has not been approved, and is of no force or effect.

Any injury premised on an unapproved site plan at this juncture remains speculative. Our Supreme Court, in addressing similar land use regulation, has required more than mere speculation, requiring that, "a party seeking to invalidate a regulation is required to present sufficient facts to the court that demonstrate the regulation's adverse impact on some protected interest of its own, in its own particular case, and *not merely under some hypothetical set of facts as yet unproven.*" (Emphasis added.) *Queach Corp.* v. *Inland Wetlands*

---

[6] The hearing on the motion to dismiss focused heavily on the fact the traffic impact was dependent upon the site plan. This was evident in Bush's testimony:

"Q. So, Ms. Bush, until a site plan is approved we really won't know the number of trips that will be generated will we?

"A. No."

*Commission,* 258 Conn. 178, 190, 779 A.2d 134 (2001); see also *Goldfisher* v. *Connecticut Siting Council,* supra, 95 Conn. App. 198 ("[a]lthough one may establish aggrievement by establishing the possibility of harm, mere speculation that harm may ensue is not an adequate basis for finding aggrievement").

The plaintiff argues that because the use variance was granted on the basis of the board's consideration of the conceptual site plan and the "public safety factors" pursuant to General Statutes § 8-6,[7] that somehow the board made a determination as to a particular traffic pattern. This misunderstands the task with which the board is charged under § 8-6. All the board did was find that the use proposed by the developer's application could be accommodated without creating a hazard; the board made no particular determinations as to a specific traffic pattern.[8] Put in other terms, finding aggrievement based on the traffic impact of an unapproved site plan would be tilting at windmills at this point. The plaintiff will be free to make traffic-related arguments at the site plan stage.[9] Accordingly, the trial court's finding that the plaintiff was not classically aggrieved was legally and factually justified.

---

[7] General Statutes § 8-6 (a) provides in relevant part: "The zoning board of appeals shall have the following powers and duties . . . (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, [and] welfare . . . ."

[8] For instance, the developer submitted a traffic engineering report that noted "the proposed use is likely to have no significant impact on the roadway network in the vicinity of the area." These submissions were presented to the board to guide their consideration of the use variance application but were not formally adopted. Therefore, any claims of aggrievement predicated on a proposed traffic plan are not yet injurious.

[9] At oral argument before this court, counsel for the board specifically represented to the panel, in response to a question, that if the judgment of the trial court is affirmed, the plaintiff will be free to make arguments concerning traffic congestion at the site plan stage and that the board will not claim the plaintiff is foreclosed from doing so.

The plaintiff next claims that the trial court erred by finding it was not statutorily aggrieved under General Statutes § 8-8 pursuant to the "municipality concerned" doctrine.[10] Notwithstanding the fact that § 8-8 does not expressly include "municipalities" within its definition of "aggrieved parties," our Supreme Court has held that the "municipality concerned is always entitled to represent [the public interest] by participating as a party to an appeal." *Tyler* v. *Board of Zoning Appeals*, 145 Conn. 655, 658, 145 A.2d 832 (1958). On this point, the trial court correctly noted that the "municipality concerned" refers to the municipality of a board that has rendered a decision. See *DeRito* v. *Zoning Board of Appeals*, 18 Conn. App. 99, 103, 556 A.2d 632 (1989). As the plaintiff has cited no authority for the extension of the "municipality concerned" doctrine to include adjoining municipalities, this argument must be rejected.[11] Because the plaintiff was neither classically nor statutorily aggrieved by the board's approval of the use variance, the court properly dismissed its appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] General Statutes § 8-8 (1) provides that an "aggrieved person" means "a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any person owning land in this state that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."

[11] The plaintiff acknowledges the lack of authority for this proposition in its brief. For instance, the plaintiff argues "[w]hile the trial court is correct that there is no case law supporting the [plaintiff's] argument in this regard, the facts of this case support the conclusion that the [plaintiff] is a 'municipality concerned' establishing aggrievement."