******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

NORTH BRANFORD CITIZENS AGAINST BULK
PROPANE STORAGE *v.* TOWN OF
NORTH BRANFORD ET AL.
(AC 46854)

Alvord, Clark and Westbrook, Js.

*Syllabus*

The plaintiff, an association comprised of town residents who opposed the construction of a bulk propane storage facility in the town, appealed from the judgment of the trial court dismissing its declaratory judgment action against the defendants. The plaintiff claimed that the court erred in dismissing the action on the ground that it failed to exhaust its administrative remedies. *Held*:

This court affirmed the trial court's judgment dismissing the action on the alternative ground that the plaintiff lacked standing to maintain the action against the defendants, the plaintiff having failed to allege sufficient facts to establish that any of its individual members were aggrieved, as is required to establish associational standing.

The plaintiff's allegation that certain actions by one of the defendants, a town official, violated the public trust, without any allegation of how that violation affected the plaintiff's individual members in a manner distinguishable from those in the community as a whole, was insufficient to establish that the plaintiff's members were aggrieved.

Argued October 10, 2024—officially released January 28, 2025

*Procedural History*

Action seeking a judgment declaring that certain zoning regulations were invalid, brought to the Superior Court in the judicial district of New Haven, where the court, *Kamp, J.*, granted the defendants' motions to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Peter C. White*, for the appellant (plaintiff).

*Bryan L. LeClerc*, for the appellees (named defendant et al.).

*Jeffrey T. Beatty*, for the appellee (defendant 2772 BPR, LLC).

*Timothy J. Lee*, for the appellee (defendant Donald Fucci).

*Opinion*

CLARK, J. The plaintiff, North Branford Citizens Against Bulk Propane Storage, appeals from the judgment of the trial court dismissing its declaratory judgment action against the defendants, the Town of North Branford (town), North Branford Planning and Zoning Commission (commission), Donald Fucci, and 2772 BPR, LLC (company). On appeal, the plaintiff claims that the court erred in dismissing the action on the ground that the plaintiff failed to exhaust its administrative remedies. We affirm the judgment of the trial court on the alternative ground that the plaintiff lacked standing to maintain the action.

The complaint, viewed in the light most favorable to the plaintiff; see *State Marshal Assn. of Connecticut, Inc.* v. *Johnson*, 198 Conn. App. 392, 394, 234 A.3d 111 (2020); alleges the following facts that are relevant to our resolution of this appeal. The plaintiff is an association comprised of town residents who oppose the construction of a bulk propane storage facility at 40 Ciro Road (property) in North Branford. During the relevant time period, Fucci was a member of the North Branford Town Council (town council) and the owner of the property. Prior to the events at issue, bulk propane storage was a prohibited use under the town's zoning regulations. In May, 2014, the company applied to the commission for an amendment to the zoning regulations that would allow construction of a facility on the property consisting of two 30,000 gallon propane storage tanks (facility). Trucks equipped with 10,000 gallon propane tanks would deliver propane to the facility, and smaller trucks would deliver propane from the facility to residential and commercial customers. To get to the

facility, the trucks would have to travel along Foxon Road, a heavily trafficked commuter route.

The complaint alleges that Fucci and Anthony Candelora, who was then mayor of the town, attended a closed hearing of the commission to lobby in favor of the amendment to the zoning regulations in order to advance Fucci's personal pecuniary interests by facilitating the sale of the property to the company. Thereafter, the town council, with Fucci voting in favor, voted to replace two members of the commission who had voiced objections to the amendment. At the next meeting of the newly comprised commission, on August 7, 2014, the commission approved the amendment. The complaint further alleges that Fucci and Candelora used their influence to replace members of the town's Inland Wetlands and Watercourse Agency (IWWA) and attended a closed meeting of the IWWA on August 14, 2014, in an attempt to ensure approval of the inland wetlands portion of the company's permit application.[1]

In *2772 BPR, LLC* v. *Planning & Zoning Commission*, 207 Conn. App. 377, 262 A.3d 906, cert. denied, 340 Conn. 908, 264 A.3d 1001 (2021), this court addressed the company's appeal from the commission's denial of its site plan application. Though not set forth in the complaint, to provide additional context for the plaintiff's claim, we note the following additional facts and procedural history set forth in our decision in *2772 BPR, LLC*: "The amended regulations became effective on September 5, 2014. On that date, the [company]

---

[1] The complaint does not allege that the IWWA actually voted to approve the application. In fact, as we note later in this opinion, the inland wetlands portion of the application was approved by the Department of Energy & Environmental Protection, not the IWWA. See General Statutes § 22a-42a (c) (1) (providing that, if local inland wetlands agency fails to act on application within time prescribed by section, "the applicant may file such application with the Commissioner of Energy and Environmental Protection who shall review and act on such application in accordance with this section").

submitted a site development plan application to the
commission in which it sought approval to construct on
the property two 30,000 gallon propane storage tanks,
a garage, a connector building, an office building, and
canopies. On October 2, 2014, the commission held a
public hearing on the [company's] application. After
hearing testimony from the [company], the commission
set aside the application pending review of the inland
wetlands portion of the application. On January 17,
2017, with regard to the wetlands matter, the Depart-
ment of Energy & Environmental Protection issued a
final decision in favor of the [company], which allowed
it to proceed with its application before the commis-
sion. The commission continued the public hearing on
the site development plan application on March 2,
March 9, and March 16, 2017." (Footnote omitted.)
Id., 380–81.

"On March 16, 2017, the commission voted three to
two to deny the [company's] application." Id., 383. The
company appealed the denial of its application to the
Superior Court, which denied the appeal. Id., 384–85. On
September 14, 2021, this court reversed that judgment,
concluding that the commission improperly denied the
company's application. Id., 396.

The plaintiff commenced the present action on March
3, 2017, while the company's site plan application was
pending before the commission. The complaint con-
tained a single count seeking a judgment declaring the
amended zoning regulations "invalid for conflict of
interest by members of the town council, for defective
and inadequate notice by the [commission], or as
against public policy." At the time it filed the complaint,
the plaintiff also filed an ex parte motion for a tempo-
rary injunction seeking to enjoin the construction of
the facility "until the validity of the zoning regulations

has been established."[2] On the same day, the court, *A. Robinson, J.*, denied the motion for a temporary injunction.

On April 5, 2017, Fucci filed a motion to dismiss claiming, inter alia, that the plaintiff lacked standing and failed to exhaust its administrative remedies.[3] In relevant part, Fucci argued that the plaintiff failed to satisfy the test for associational standing because the complaint failed to allege sufficient facts to establish that the individual members of the association would have had standing to maintain the action in their own right. The plaintiff filed an opposition to the motion to dismiss, in which it argued that the complaint sufficiently alleged that it had standing to maintain the action on behalf of its members. The town and the commission filed a joint motion to dismiss on March 7, 2022, and the company filed a motion to dismiss on November 16, 2022.[4] Both motions expressly adopted the arguments set forth in Fucci's motion with respect to the plaintiff's standing.

The court, *Kamp, J.*, heard argument on the motions to dismiss on April 24, 2023. During the argument, the

---

[2] The factual allegations in the motion for a temporary injunction largely mirrored those set forth in the complaint, and did not contain any additional allegations relevant to the plaintiff's standing to maintain the action.

[3] After Fucci filed his motion to dismiss, the plaintiff filed a request to amend its complaint, but the court did not act on that request prior to considering the motion to dismiss. Because Fucci's motion to dismiss claimed that the court lacked subject matter jurisdiction on the basis that the plaintiff lacked standing and failed to exhaust administrative remedies, "the court properly considered the motion to dismiss on the basis of the operative complaint and not the plaintiff's proposed amended complaint." *North Star Contracting Corp.* v. *Albright*, 156 Conn. App. 311, 315 n.5, 112 A.3d 216 (2015). Moreover, we note that the plaintiff's request to amend sought only to add a claim for injunctive relief, and did not contain any additional factual allegations relevant to the issue of standing.

[4] Although not reflected in the record, at oral argument before this court, the plaintiff represented that this case was put on hold pending adjudication of the company's appeal from the commission's denial of the site plan application.

parties focused primarily on the defendants' claim that the plaintiff failed to exhaust its administrative remedies. Toward the end of the hearing, the court briefly addressed the defendants' claim that the plaintiff lacked standing. Specifically, the court asked the plaintiff how it had standing to maintain the action on behalf of its members given that the complaint does not identify any of the individual members or provide any information about "who these people are [or] where they live." The plaintiff argued that "the complaint alleges sufficiently that the organization has standing" because the members are residents of the town, the association was formed for the purpose of opposing the facility, and the action did not require the participation of the individual members. On August 9, 2023, the court granted the motions to dismiss on the ground that the plaintiff failed to exhaust its administrative remedies. The court did not address the claim that the action should be dismissed on the ground that the plaintiff lacked standing.

On appeal, the plaintiff claims that the court erred in granting the motions to dismiss on the ground that the plaintiff failed to exhaust its administrative remedies. On October 30, 2024, following oral argument, we ordered the parties to file supplemental memoranda "addressing whether the trial court's judgment of dismissal may be affirmed on the alternative ground that the plaintiff . . . lacked standing to commence the underlying action."[5] On the basis of our review of the

---

[5] "Our Supreme Court has stated that [o]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . One such exceptional circumstance is a claim that implicates the trial court's subject matter jurisdiction, which may be raised at any time and, thus, is not subject to our rules of preservation." (Internal quotation marks omitted.) *Townsend* v. *Commissioner of Correction*, 226 Conn. App. 313, 326 n.13, 317 A.3d 1147 (2024). Because a plaintiff's lack of standing deprives the trial court of subject matter jurisdiction over the action, it is proper for us to consider whether the judgment of the trial court may be affirmed on this alternative ground. See *Black* v. *West Hartford*, 205 Conn. App. 749, 757–58, 261 A.3d 163 (2021).

record and the supplemental memoranda filed by the parties, we conclude that the plaintiff lacked standing to maintain the action.

"The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. Practice Book § 10-31 (a). [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 213–14, 982 A.2d 1053 (2009). "When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Cuozzo* v. *Orange*, 315 Conn. 606, 615, 109 A.3d 903 (2015). "Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, supra, 214.

"It is a basic principle of our law . . . that the [plaintiff] must have standing in order for a court to have jurisdiction to render a declaratory judgment." (Internal quotation marks omitted.) *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, 218 Conn. 335, 346, 589 A.2d 356 (1991). "The declaratory judgment procedure . . . may be employed only to resolve a justiciable controversy where the interests are adverse, where there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement. . . . A party pursuing declaratory relief

must therefore demonstrate, as in ordinary actions, a justiciable right in the controversy sought to be resolved, that is, contract, property or personal rights . . . as such will be affected by the [court's] decision . . . ." (Citation omitted; internal quotation marks omitted.) Id., 347–48.

"Standing is the legal right to set judicial machinery in motion. . . . Standing . . . is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) *State Marshal Assn. of Connecticut, Inc.* v. *Johnson*, supra, 198 Conn. App. 397–98. "These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." (Citations omitted; internal quotation marks omitted.) *Monroe* v. *Horwitch*, 215 Conn. 469, 473, 576 A.2d 1280 (1990). "Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *State Marshal Assn. of Connecticut, Inc.* v. *Johnson*, supra, 398.

The sole plaintiff in the present case is an association of residents of the town. The plaintiff does not claim that it has standing on the basis that the plaintiff's own interests were injured by the defendants' actions; rather, the plaintiff claims that it has standing to vindicate alleged injuries to its members' interests.

In *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, 199 Conn. 609, 616, 508 A.2d 743 (1986), our Supreme Court adopted the test for associational standing articulated by the United States Supreme Court in *Hunt* v. *Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977). Under that test, "[a]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." (Internal quotation marks omitted.) *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, supra, 616.

The defendants in the present case claim only that the plaintiff failed to satisfy the first prong of the *Worrell* test. "To meet that prong, an association must demonstrate aggrievement on the part of its members. . . . An association satisfies that burden by establishing that at least one of its members is aggrieved by the action in question. . . . Accordingly, resolution of the question of the plaintiff's associational standing hinges on whether the plaintiff has established that one of its members is aggrieved." (Citations omitted.) *State Marshal Assn. of Connecticut, Inc.* v. *Johnson*, supra, 198 Conn. App. 401–402.

"There are two general types of aggrievement, namely, classical and statutory; either type will establish standing . . . ." (Internal quotation marks omitted.) Id., 402. The plaintiff in the present case relies only on classical aggrievement. "Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . .

Second, the party must also show that the [alleged conduct] has specifically and injuriously affected that specific personal or legal interest." (Internal quotation marks omitted.) Id. "[A] party who [is] simply a member of the general public who has not demonstrated how she was harmed in a unique fashion by the conduct she [has] challenged in a declaratory judgment action [has] failed to establish a colorable claim of direct injury, and accordingly lack[s] standing to maintain the action." (Emphasis omitted; internal quotation marks omitted.) *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, supra, 218 Conn. 348. Accordingly, to satisfy the first prong of the *Worrell* test, an associational plaintiff is required to allege sufficient facts to demonstrate that at least one of its members has an interest in the subject matter of the controversy "that is distinguishable from that of the general public," and that it has suffered a "colorable claim of direct injury" to that interest. (Emphasis omitted; internal quotation marks omitted.) Id.

In the present case, the complaint contains no specific allegations describing any interest held by the plaintiff's members that is distinguishable from that of the general public and that would be harmed by the defendants' actions. The complaint merely alleges that the plaintiff's members are "[town] residents who oppose construction of a bulk propane storage facility at [the property]," and that the plaintiff "has members who would otherwise have standing to sue in their own right." It is well established that such conclusory allegations are insufficient to establish that the plaintiff's members were aggrieved; rather, the complaint must contain "supporting allegations as to the particular nature of the aggrievement . . . ." (Internal quotation marks omitted.) *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals*, 266 Conn. 531, 543, 833 A.2d 883 (2003); see also *State Marshal Assn. of Connecticut,*

*Inc.* v. *Johnson*, supra, 198 Conn. App. 405 ("[a]lthough the plaintiff broadly asserts an interest in 'declaring the invalidity of [the defendant's] actions' . . . such a conclusory statement does not satisfy the first prong of the classical aggrievement test"); *Concerned Citizens for the Preservation of Watertown, Inc.* v. *Planning & Zoning Commission*, 118 Conn. App. 337, 342, 984 A.2d 72 (2009) ("conclusory statements do not satisfy the appellant's burden of proving aggrievement"), cert. denied, 294 Conn. 934, 987 A.2d 1028 (2010). Thus, the bare allegation that the plaintiff's members "oppose construction of a bulk propane storage facility" and "would otherwise have standing to sue in their own right" are not sufficient to establish aggrievement. See *State Marshal Assn. of Connecticut, Inc.* v. *Johnson*, supra, 404–405.

The plaintiff, however, makes two separate arguments in support of its claim that the complaint sufficiently alleged that its members were aggrieved. First, the plaintiff relies on allegations, made in support of its claim for temporary injunctive relief, that its members would be irreparably harmed because the amended zoning regulations would result in "[a]dditional traffic onto Foxon Road, clogging an already congested commuter road," "[d]iminished property values due to the proximity of a potential [boiling liquid expanding vapor explosion (BLEVE)]," and "[a]nxiety from a small but extant risk of a catastrophic BLEVE . . . ." The plaintiff argues that we should infer from these allegations "that some [of the plaintiff's] members live . . . within the area that would be affected by a BLEVE, and that would be affected by the diminished property values and traffic congestion."[6] Second, the plaintiff argues that its

---

[6] In its supplemental memoranda filed with this court, the plaintiff also asserts that some of the plaintiff's members "do in fact live . . . within the area affected by the zoning amendments." Because the complaint does not include any such allegations, we cannot consider them in determining whether the plaintiff sufficiently alleged that its members had standing. See, e.g., *Nelson* v. *Commissioner of Correction*, 326 Conn. 772, 781, 167 A.3d

members were aggrieved because Fucci's alleged "serious violation of the public trust" is sufficient to establish aggrievement for "any North Branford citizen, regardless of location . . . ." (Citations omitted.) We conclude that the plaintiff has failed to allege sufficient facts to establish that any of its members have a specific, personal or legal interest in the subject matter as required to establish classical aggrievement.

The requirement that a plaintiff allege specific facts demonstrating how it was aggrieved "is not merely a matter of form," but, rather, "provides an opportunity for the opposing party to answer in denial, thereby placing the jurisdictional fact[s] into dispute for the court's resolution." (Internal quotation marks omitted.) *Mayer* v. *Historic District Commission*, 325 Conn. 765, 791, 160 A.3d 333 (2017). "[T]he burden [is] upon the pleaders to make such averments that the material facts [alleged in the complaint] should appear with reasonable certainty . . . . Whenever that language fails to define clearly the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice between the parties. . . . But *essential allegations may not be supplied by conjecture or remote implication.*" (Emphasis added; internal quotation marks omitted.) *Stone* v. *Pattis*, 144 Conn. App. 79, 99, 72 A.3d 1138 (2013); see also *Pike* v. *Bugbee*, 115 Conn. App. 820, 828 n.5, 974 A.2d 743 ("[a]lthough the court is required to read the pleadings broadly and in the

952 (2017) ("[i]t is clear that a memorandum of law is not a proper vehicle for supplementing the factual allegations in a complaint"). In any event, for the reasons explained subsequently in this opinion, because the complaint does not contain any allegations describing where any of the plaintiff's members live or the area likely to be affected by the construction of the facility, the general assertion that the plaintiff's members live "within the area affected by the zoning amendments" is insufficient to establish that any individual member was aggrieved.

light most favorable to sustaining the legal sufficiency of the claim, it cannot read additional allegations into the pleading"), cert. granted, 293 Conn. 923, 980 A.2d 912 (2009) (appeal withdrawn December 1, 2011).

Our Supreme Court has emphasized that the purpose of the first prong of the associational standing test adopted in *Worrell* is to ensure that there is a justiciable controversy to be resolved by requiring the associational plaintiff "to establish . . . that its members would otherwise have standing to sue in their own right . . . ." (Internal quotation marks omitted.) *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, supra, 218 Conn. 345. "Associational standing, then, is derivative of—and not independent from—individual standing." *Prairie Rivers Network* v. *Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021); see also *United Food & Commercial Workers Union Local 751* v. *Brown Group, Inc.*, 517 U.S. 544, 555, 116 S. Ct. 1529, 134 L. Ed. 2d 758 (1996) (first prong of associational standing test "guarantees the satisfaction of [standing] elements by requiring an organization suing as representative to include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association"). Thus, in assessing whether the plaintiff satisfied the first prong of the associational standing test, we are required "to scrutinize the nature of the interests of the association's members" to determine whether "the members had a legal interest in the controversy distinguishable from the interest of the general public." *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, supra, 345–46.

We first address the plaintiff's argument that allegations that the plaintiff's members would be irreparably harmed are sufficient to establish aggrievement. The plaintiff essentially argues that we should infer, from

a general description of the type of harm it claims would be caused by the construction of the facility, that at least one unidentified member of the plaintiff possesses an interest that would suffer such harm. The plaintiff, however, does not cite a single case to support that contention, and our own research has not uncovered any case in which a court has found associational standing based on such sparse allegations. To the contrary, in cases in which our courts have found that an association had standing to represent its members' interests, there was sufficient information about the association's individual members to support a claim that at least one of the members had an interest distinguishable from the public at large. See, e.g., *Connecticut Assn. of Not-For-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 386–88, 709 A.2d 1116 (1998) (association of not-for-profit nursing homes had standing to challenge Medicaid reimbursement methodology applied only to not-for-profit nursing homes that allegedly resulted in lower reimbursement rates because practice affected plaintiff's members and record showed that at least some members had not agreed to accept methodology); *Connecticut State Medical Society* v. *Board of Examiners in Podiatry*, 203 Conn. 295, 305, 524 A.2d 636 (1987) (association of medical doctors had standing to challenge declaratory ruling determining that treatment of ankle was within scope of practice of podiatrists, who are not medical doctors, where specific individual member was found to have standing).

In the present case, the complaint does not identify any of the plaintiff's members or describe any member's interest beyond the vague allegation that they reside in the town and oppose construction of the facility. There is no allegation, for instance, that any member of the plaintiff owns or resides on property that is adjacent to or in close vicinity to the facility. Nor is there any allegation describing how likely it is that a BLEVE

would occur, what would happen if a BLEVE did occur, how it would affect the surrounding area, or the extent of the area that would be affected. The allegations that the plaintiff's members would suffer "[d]iminished property values due to the proximity of a [BLEVE]" and "[a]nxiety" due to the risk of a BLEVE, therefore, are too vague and uncertain to infer that any of the plaintiff's members would be harmed in a manner that is distinguishable from the general public. Similarly, in the absence of any allegation that the plaintiff's members either reside near or regularly travel through the area in question, the allegation that the defendants would be harmed by "[a]dditional traffic onto Foxon Road" does not support an inference that the plaintiff's members would be affected by such traffic any more than other members of the public who travel through the area. See, e.g., *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals*, supra, 266 Conn. 543–44 (plaintiff claiming to be aggrieved based on increased traffic lacked standing because there was no showing how plaintiff would be affected more than other members of general public who traveled through area). On the basis of the foregoing, we therefore conclude that the plaintiff failed to allege sufficient facts to establish that any of its individual members were aggrieved, as is required to establish associational standing.

Our conclusion is supported by a number of federal cases that have applied the associational standing test established in *Hunt*, which our Supreme Court adopted in *Worrell*. In *Summers* v. *Earth Island Institute*, 555 U.S. 488, 498–99, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009), the United States Supreme Court, citing *FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 221, 235, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990), a case that was decided on cross motions for summary judgment, noted that an associational plaintiff is required to identify at least one specific member who suffered the requisite harm necessary to

establish standing. Since *Summers,* several federal courts of appeals have held that the same requirement applies at the pleading stage. See *National Infusion Center Assn.* v. *Becerra,* 116 F.4th 488, 497 (5th Cir. 2024) ("[t]o invoke associational standing . . . [the plaintiff] must identify at least one member that has suffered or will suffer harm" (footnote omitted)); *Assn. of American Physicians & Surgeons* v. *United States Food & Drug Administration,* 13 F.4th 531, 543 (6th Cir. 2021) (to meet first prong of *Hunt* test, "an organization must do more than identify a likelihood that the defendant's conduct will harm an unknown member in light of the organization's extensive size or membership base," but "must instead identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct"); *Draper* v. *Healey,* 827 F.3d 1, 3 (1st Cir. 2016) (holding that associational plaintiff was required to identify in its complaint at least one member with standing); *Southern Walk at Broadlands Homeowner's Assn., Inc.* v. *OpenBand at Broadlands, LLC,* 713 F.3d 175, 184 (4th Cir. 2013) (affirming dismissal where association "failed to identify a single specific member injured by the [challenged conduct]" (emphasis omitted)); *New Jersey Physicians, Inc.* v. *President of the United States,* 653 F.3d 234, 241 (3d Cir. 2011) (plaintiff failed to meet burden to allege associational standing where "the complaint fail[ed] to establish that [the only member identified in the complaint] has experienced any injury in fact").

Although some federal courts of appeals have not required an associational plaintiff to include allegations revealing the specific *identity* of an individual member at the pleading stage, even those courts have held that a complaint must include sufficient specific factual allegations to support a claim that some individual member or members of the association have an interest in the

dispute distinguishable from the general public; allegations of "generalized harm to a group of individual members will not do . . . for associational standing." *Prairie Rivers Network* v. *Dynegy Midwest Generation, LLC,* supra, 2 F.4th 1010; id. (even if associational plaintiff was not required to identify specific members with standing at pleading stage, "it must . . . provide some way of showing that *at least one* individual member has standing to sue on their own" (emphasis in original)); see also *Faculty, Alumni, & Students Opposed to Racial Preferences* v. *New York University,* 11 F.4th 68, 75–76 (2d Cir. 2021) (concluding that, even if associational plaintiff was not required to identify members with standing, complaint was insufficient because it failed to allege specific facts to show that individual members had standing), cert. denied,      U.S.     , 142 S. Ct. 2813, 213 L. Ed. 2d 1038 (2022).[7] For the reasons

[7] The Second Circuit has not expressly addressed whether *Summers* requires an associational plaintiff to identify specific members with standing in its complaint. Prior to *Summers,* the Second Circuit in *Building & Construction Trades Council of Buffalo, New York & Vicinity* v. *Downtown Development, Inc.,* 448 F.3d 138, 146 (2d Cir. 2006), held that an associational plaintiff was not required to identify specific members at the pleading stage. The Second Circuit recently suggested that it would continue to adhere to that holding, but did not expressly reach the issue. See *Do No Harm* v. *Pfizer, Inc.,* United States Court of Appeals, Docket No. 23-15, 2025 WL 63404, *4, 10 (2d Cir. 2025). In *Building & Construction Trades Council of Buffalo, New York & Vicinity,* however, the complaint alleged specific facts about the nature of the plaintiff's members' interest in the dispute sufficient to ensure that some members had standing, even if those members were not identified by name. See *Building & Construction Trades Council of Buffalo, New York & Vicinity* v. *Downtown Development, Inc.,* supra, 146 (plaintiff union claiming environmental contamination at site of construction project alleged that its members had been employed at site, exposed to contaminated soil and waste, and drank water from allegedly polluted water supply).

Similarly, although the Ninth Circuit in *California Restaurant Assn.* v. *Berkeley,* 89 F.4th 1094, 1100 (9th Cir. 2024) concluded that an associational plaintiff had standing despite failing to identify any members in its complaint, the allegations in that case contained sufficient information to ensure that some members of the association had an interest in the dispute distinguishable from the public at large. See id. (in challenge to local ordinance restricting use of natural gas in new construction, complaint alleged that

explained previously, the complaint in the present case alleges only "generalized harm"; *Prairie Rivers Network* v. *Dynegy Midwest Generation, LLC*, supra, 1010; that is insufficient to establish that any individual member would have standing to sue in their own right.

We next address the plaintiff's argument that Fucci's alleged violation of the public trust was sufficient to establish aggrievement. Relying on *Low* v. *Madison*, 135 Conn. 1, 60 A.2d 774 (1948), and *Murach* v. *Planning & Zoning Commission*, 196 Conn. 192, 491 A.2d 1058 (1985), the plaintiff contends that its members were aggrieved because "a serious violation of the public trust . . . has been grounds to invalidate zoning amendments since [*Low*]."

The plaintiff's reliance on *Low* and *Murach* conflates the issue of whether its complaint states a cognizable cause of action with the question of whether the plaintiff has standing to pursue that claim. Although *Low* and its progeny stand for the proposition that a public official's participation in a matter in which he has a pecuniary or personal interest may be grounds for invalidating a zoning decision, those cases did not dispense with the requirement that a plaintiff pursuing such a claim establish aggrievement by alleging a specific, personal or legal interest and individualized harm. Rather, our courts have addressed the threshold question of standing separately from the merits of claims seeking to invalidate a zoning regulation under *Low*. See *Murach* v. *Planning & Zoning Commission*, supra, 196 Conn. 194 n.8 (noting, prior to addressing merits of claim under *Low*, that "[t]he trial court specifically found that [the plaintiffs] have standing to pursue this appeal [from the commission's decision] under [General Statutes]

---

association's members included restaurateurs and chefs who "would open or relocate a restaurant in a new building in Berkeley but for the [c]ity's ban on natural gas").

§ 8-28 as abutting owners" (internal quotation marks omitted)); accord *Schwartz* v. *Hamden*, 168 Conn. 8, 10, 13, 18, 357 A.2d 488 (1975) (where several plaintiffs appealed challenging decision of planning and zoning commission based on, inter alia, alleged conflict of interest by member of commission, Supreme Court affirmed trial court's dismissal of appeal by one group of plaintiffs for lack of aggrievement); *Fletcher* v. *Planning & Zoning Commission*, 158 Conn. 497, 502–503, 264 A.2d 566 (1969) (prior to addressing merits of plaintiff's challenge to zoning decision based on *Low*, Supreme Court concluded that trial court properly found plaintiff to be aggrieved because his status as record owner of one affected parcel and contract purchase of another gave him "a specific, personal and legal interest in the subject matter of the commission's decision"). These cases are consistent with the "well established principle that common concern for obedience to law is not a direct injury that supports standing." (Internal quotation marks omitted.) *Andross* v. *West Hartford*, 285 Conn. 309, 327, 939 A.2d 1146 (2008). Accordingly, we conclude that the allegation that Fucci's actions violated the public trust, without any allegation of how that violation affected the plaintiff's individual members in a manner distinguishable from those in the community as a whole, was insufficient to establish that the plaintiff's members were aggrieved.

On the basis of the foregoing, we conclude that the plaintiff lacked standing to maintain this action against the defendants and, therefore, that the trial court lacked subject matter jurisdiction over the action. We therefore affirm the trial court's judgment dismissing the action on this alternative ground.

The judgment is affirmed.

In this opinion the other judges concurred.